[No. 1906.]

CHARLES HILDRETH AND ANOTHER *v.* THE STATE.

1. ADULTERY — JURISDICTION OF THE DISTRICT AND COUNTY COURTS — TRANSFER OF MISDEMEANORS FROM THE FORMER TO THE LATTER — PRACTICE.— The information in this case, charging the defendants with adultery, was filed in the district court of Titus county on the 2d day of November, 1882, at which time the said district court was vested with jurisdiction of all misdemeanor cases of which, under the general law, the county courts had jurisdiction. Pending the trial of the case, the act of the Legislature of April 13, 1883, transferring to and vesting in the county court of Titus county jurisdiction in all such misdemeanors, went into effect, and the information and all papers in this cause were transferred by order of the said district court to the said county court, in which this trial and conviction were subsequently had. *Held* that, in the first instance, the information was properly filed in the district court then having original jurisdiction of the offense charged, and that its subsequent transfer to the county court, after jurisdiction over such misdemeanors had been vested in it, was both regular and correct.

2. Same — Information.— It is not essential to the sufficiency of an information for adultery that it should allege the sex of the parties charged, i. e., that one is a man and the other is a woman. Nor is it necessary that it should allege the name of the person to whom one of the parties is married. It is sufficient if it alleges that one of the offenders is married to some person other than the person with whom the adultery is charged. Information charging that the defendant Mary was lawfully married to one John C., and that the said John C. was living at the time of the adultery, is ample to charge the offense.

3. Same.— Continuance was applied for in this case to produce a witness to testify that, when the defendants began living together, they had information to the effect that the spouse of the married offender was dead, and that they believed such information. But held, in view of other evidence to the effect that the offenders continued to live together in adultery after they ascertained that the said spouse was not dead, the absent testimony was immaterial, and was not calculated to change the result of the trial; wherefore the refusal of the continuance was not error.

4. Same — Evidence — Case Approved.— Bigamy and adultery are not the same offenses and are not maintainable by the same evidence. Bigamy is not committed by the intermarriage of a man and woman, one of them having a lawful spouse alive, if such marriage was entered into under a mistake of fact as to the death of the spouse. The fact, however, that they were married to each other would make their cohabitation none the less adulterous, although such marriage may have been innocently entered into, if, after ascertaining that such marriage was unlawful and void, they continued to cohabit together. Swancoat v. The State, 4 Texas Ct. App., 105, approved.

5. Charge of the Court is sufficiently certified by the mere signature of the trial judge.

6. Same.— The trial judge, having refused a special charge, indorsed it "refused," but omitted to append his signature to the indorsement. Such omission was erroneous, but in this case was immaterial, in view of the fact that the defendant reserved no bill of exception to the omission, and that the substance of the special charge, in so far as it was correct, was embodied in the general charge.

7. Same.— Notwithstanding the fact that the information charges but one of the phases of adultery, the charge of the court copies the entire statutory definition. Nevertheless, the charge, in applying the law to the facts, restricts the jury to the particular adultery charged in the information, viz., "the living together and having carnal intercourse," etc. Held that, considered in its entirety, the charge is sufficient.

Appeal from the County Court of Titus. Tried below before the Hon. W. J. Johnson, County Judge.

The information in this case charged the appellants, Charles Hildreth and Mary Curry, alias Mary Hildreth, with the offense of adultery, in that they "unlawfully and continually lived together and had carnal intercourse with each other from and on April 25, 1882, until November 23, 1882, in Titus county, Texas." They were jointly tried and convicted, and their punishments were assessed at fines of $100 each.

The State first introduced in evidence the marriage license issued to John Curry and Mary Counts, on the reverse of which was indorsed the certificate of the minister of the gospel who solemnized the marriage of the said John Curry and Mary Counts, in Titus county, Texas, on the 6th day of July, 1876.

Ben Wiley was the first witness for the State. He testified that he knew both of the defendants at and prior to the time mentioned in the indictment. He saw them married to each other some time in the spring of 1882. The marriage ceremony was performed on the bridge across Cypress creek, which marked the boundary line between Titus and Camp counties. It took place at about 9 o'clock at night, the two defendants, Parson Culpepper, L. M. Jones, Dick Wiley and witness being the only parties present. Since the date of that marriage the defendants have lived together as man and wife. Whether or not they so lived together prior to that marriage the witness was unable to say. Witness and Dick Wiley made a crop on Mr. Jones's farm in Titus county in the year 1882. The defendants lived together on that farm during that time, and occupied the same bed. The L. M. Jones spoken of was the step-father of the witness and the grandfather of the defendant, Mary Curry, *alias* Mary Hildreth. Witness knew John Curry. The said John Curry was alive. Dick Wiley, the State's second witness, testified substantially as did the first witness.

Rev. J. T. Culpepper testified, for the State, that he solemnized a marriage between the defendants, on the bridge across Cypress creek, which marked the boundary line between Titus and Camp counties, on the night of April 14, 1882. Witness was sent for in the evening, and on his arrival at the house that night he was informed that the party had to go to the Cypress bridge to be married, as the marriage license issued in Camp county. The party accordingly repaired to the bridge, and the witness performed the ceremony of marriage between the defendants in the presence of L. M. Jones and Ben and Dick Wiley. Witness knew one John Curry, and knew him when he was married to Mary Curry, *alias* Mary Hildreth, one of the defendants in this case, in 1876. The said John Curry and the defendant Mary lived together as man and wife from the time of their said marriage until John Curry was sentenced and sent to the penitentiary in 1879. John Curry still survives. He returned to Titus county, for the first time after his sentence to the penitentiary, a week or two before the affidavit in this case, charging the defendants with adultery, was filed. That affidavit was made by the witness. The mother of the defendant Mary died while the said Mary

was still a small child, and the said Mary, from that time until her marriage to Curry in 1876, when she was fifteen or sixteen years old, lived with her grandparents. Mary's father was not in Titus county at the time of her marriage to Curry. Witness did not know his whereabouts.

Sidney Suggs, the next witness for the State, testified that he saw the defendant Mary, on or about the 1st day of March, 1882, when she told him that she had heard from John Curry; that he was out of the penitentiary, and at work for Colonel Covey in Grayson county, Texas, and that she expected him home soon. A month or six weeks after this conversation, the witness, much to his surprise, heard of Mary's marriage to Charles Hildreth.

Mrs. M. J. Cress testified, for the State, that she had known the defendant Mary from her childhood. Mary lived with her grandfather, who was the father of the witness, until her marriage to John Curry in 1876. Curry was sent to the penitentiary in 1879, and returned to Titus county in November, 1882. Witness had heard her father say, prior to November, 1882, that Curry was dead. Mary had lived with Charles Hildreth as his wife, ever since their marriage in April, 1882. When Curry returned to Titus county in November, 1882, he went to the witness's house. Defendants both knew him to be there alive, but they never separated from each other, but continued and still continue to live together as man and wife.

The motion for new trial raised the questions discussed in the opinion.

*J. D. Peteet* filed an able brief and argument for the appellants.

*J. H. Burts*, Assistant Attorney-General, for the State.

Willson, Judge. I. This conviction is based upon an information presented in the district court of Titus county, on November 23, 1882, charging the defendants with the offense of adultery, which offense is a misdemeanor. At the date of the presentment of the information, and until April 13, 1883, the district court of Titus county had jurisdiction of all misdemeanor cases of which, under the general law, county courts had jurisdiction. (Gen'l Laws 16th Leg., p. 68.) By an act of the Legislature adopted April 13, 1883, its jurisdiction in such misdemeanor cases was transferred to and vested in the county court of Titus county. (Gen'l Laws 18th Leg., p. 91.) After this latter act went into operation this cause was transferred, by order of the district court, to the county court, and

in the last named court, at the April term, 1885, thereof, the conviction was had from which this appeal is prosecuted.

As the district court had jurisdiction of the offense charged at the time the prosecution was instituted, it was proper to present the information in that court, it being an offense which could be prosecuted by information; and when jurisdiction over such offenses was transferred by law from the district to the county court, it was proper to transfer the case to the latter court, which then had exclusive original jurisdiction to hear and determine it. We see no error either in the institution of the prosecution or in the transfer of it.

II. It is not essential in an indictment for adultery to allege the sex of the offenders;— that one is a man and the other a woman; though such allegation is usually made, and is more strictly in accordance with the statute defining the offense. (*Holland* v. *The State*, 14 Texas Ct. App., 182; Willson's Cr. Forms, p. 107, Form 213.) Neither is it essential to allege the name of the person to whom one of the offenders is married. It is sufficient to allege that one of them was lawfully married to some other person than the person with whom the adultery is charged. (*Collum* v. *The State*, 10 Texas Ct. App., 708.) In this case it is alleged that the defendant Mary was lawfully married to John Curry, and that said Curry was living at the time of her adultery. In all respects the information is sufficient, and there was no error in overruling defendants' exceptions to it.

III. We do not think the court erred in refusing the defendants' application for a continuance. The main fact expected to be proved by Jones, the absent witness, was that the defendants had information, before and at the time they commenced living together, that John Curry, the husband of the defendant Mary, was dead, and that they believed such information to be true. This evidence, if it had been adduced on the trial, could not have changed the result, because it was proved by the State, and was not controverted by the defendants, that they continued to live together after they *knew* that John Curry was alive. Whatever may have been their information and belief as to John Curry's death, at the time they commenced living together, cannot affect their conduct of living together *after* they ascertained to a certainty, which they did two weeks before this prosecution was instituted, that John Curry was alive. Their living together after receiving positive knowledge of this fact rendered them guilty of the offense, however innocent, from mistake of such fact, their previous conduct may have been. In view of the other evidence in the case, we are of the opinion that the facts ex-

pected to be proved by the absent witness cannot be considered material.

IV. It is contended by appellants' counsel that, as the evidence shows that defendants married each other, and lived together as husband and wife, if guilty of any offense, they are guilty of bigamy, and cannot be convicted under an indictment charging adultery. In *Swancoat* v. *The State*, 4 Texas Ct. App., 105, this court held to the contrary, and sustained a conviction for adultery in a case where the evidence established a marriage of the defendants.

This ruling in the Swancoat case we adhere to as correct in principle and supported by ample authority. (Bish. on Stat. Cr., § 662.) Nor is it in conflict, as we conceive, with the decisions of this court cited in the brief of counsel for appellants. We can very well conceive, in this case, how the defendants might not, because of a mistake of fact, be guilty of bigamy, by intermarrying with each other, and yet be guilty of adultery. The fact that they were married to each other would make their cohabitation none the less adulterous, although such marriage may have been innocently entered into, if, after ascertaining that such marriage was unlawful and void, they continued to cohabit together.

V. It is objected that the court did not certify to its charge, and did not certify to his refusal of the special charges requested by defendants, as required by the statute. (Code Crim. Proc., arts. 679, 680.) We find upon inspection of the charge given to the jury, as copied into the record, that it was signed by the judge. This was a compliance with the statute. (*Henderson* v. *The State*, 5 Texas Ct. App., 134; *Roberts* v. *The State*, id., 141; *Jeffries* v. *The State*, 9 Texas Ct. App., 598.) It does not appear that the special charge requested by the defendants was certified by the judge. It is indorsed refused, but such indorsement is not signed by the judge. There is no bill of exception in the record, however, to this omission of the court, and in this case the error is not of a character which should cause a reversal of the judgment. In so far as the special charge was correct and applicable to the facts, it was embraced in the charge given to the jury.

VI. It is objected to the charge of the court that it presents both phases of the offense of adultery, when the information charges but one. It is true that, in defining adultery in the charge, the court copies the statutory definition; but when the court in its charge applies the law to the facts, it restricts the jury to the particular adultery charged in the information, viz., the living together and having carnal intercourse with each other, etc. Considering

the charge as a whole, we find no error in it of which the defendants can be heard to complain.

There are other supposed errors complained of by defendants, to all of which we have given attention, but we consider it unnecessary to discuss them, as they are of minor importance. We have discovered no reversible error in the record, and the judgment is affirmed.

*Affirmed.*

[Opinion delivered October 31, 1885.]